UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JASON SCOTT CARR ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No: 2:19-cv-12 |
| v. ) | |
| ) | Judge Christopher H. Steger |
| ANDREW SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION**

Plaintiff Jason Carr seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-34, 1381-83f. [*See* Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge, per 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 19].

For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings [Doc. 22] will be **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 24] will be **GRANTED**; and judgment will be entered **AFFIRMING** the Commissioner's decision.

**I.   Procedural History**

On June 6, 2011, Plaintiff applied for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-434, alleging disability of November 10, 2009. (Tr. 15). Plaintiff's claims were denied initially as well as on reconsideration. (*Id.*). Plaintiff then requested a hearing before an administrative law judge. (*Id.*). On May 28, 2013, Administrative Law Judge ("ALJ") Michael

1

Davenport found Plaintiff was not disabled, concluding that Plaintiff's limitations from his "type I diabetes, diabetic neuropathy, right knee disorder, and mood disorder limited him to simple and routine job tasks at a reduced range of light exertional level." (*Id.*). "[ALJ] Davenport found further that the limitations precluded [ ] [Plaintiff] from performing past relevant work; however, [ ] [Plaintiff] could perform other jobs that exist in the national economy in significant numbers . . . ." (*Id.*).

In August 2015, Plaintiff applied for disability insurance benefits for a second time, alleging disability of May 29, 2013—the day after his initial claim's denial. (Tr. 15). Plaintiff's claims were again denied initially and on reconsideration. (*Id.*). As a result, Plaintiff requested a hearing before an administrative law judge. (*Id.*).

In December 2017, the Honorable Marty Turner, administrative law judge, heard testimony from Plaintiff and a vocational expert, as well as argument from Plaintiff's attorney. The ALJ then rendered his decision, finding that Plaintiff was not under a "disability" as defined in the Act. (*Id.* at 30). Following the ALJ's decision, Plaintiff requested that the Appeals Council review his denial; however, that request was denied. (*Id.* at 1). Exhausting his administrative remedies, Plaintiff filed his Complaint in January 2019, seeking judicial review of the Commissioner's final decision under § 405(g). [Doc. 1]. The parties filed competing dispositive motions, and this matter is ripe for adjudication.

## II. Findings by the ALJ

The ALJ made the following findings with respect to the decision on Plaintiff's second application for benefits:

1. Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2015.

2. Plaintiff had not engaged in substantial gainful activity since May 29, 2013,

through the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and § 416.971 *et seq.*).

3. Plaintiff has the following severe impairments: diabetes mellitus, neuropathy, knee disorder, mood disorder, and unspecified anxiety disorder (20 C.F.R. § 404.1520(c) and § 416.920(c)).

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Absent certain limitations, Plaintiff retained the residual functional capacity to perform "light work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(b).

6. Plaintiff is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. Plaintiff was born on July 28, 1982, and was 30 years old, which is defined as a younger individual (age 18-49) on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963)).

8. Plaintiff has at least a high school education and can communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material (SSR 82-41 20 C.F.R. § 404, Subpart P, Appendix 2).

10. In considering the claimant's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Plaintiff has not been under a disability, as defined in the Act, from May 29, 2013, through the date of the ALJ's decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. at 15-31).

**III.    Standard of Review**

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish disability under the Social Security Act, a plaintiff must show that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether plaintiffs are disabled. 20 C.F.R. §§ 404.1520; 416.920. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity, he is not disabled; (2) if the claimant does not have a severe impairment, he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, he is disabled; (4) if the claimant is capable of returning to work he has done in the past, he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, he is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, the burden shifts to the Commissioner to show that there is work in the national economy that he can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the findings of the Commissioner and whether the Commissioner made any legal errors in the process of reaching their decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if evidence exists to support the Commissioner's findings, those findings must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its judgment for that of the Commissioner because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes there is a zone of choice within which the decision-makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of the substantial-evidence review, courts may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Further, courts are not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

**IV. Analysis**

In light of the substantial-evidence standard, Plaintiff's objection is that substantial evidence does not support the Commissioner's non-disability finding in this case. In support of that objection, Plaintiff raises the following four issues: (1) whether the ALJ erred in determining that the objective medical evidence did not support Plaintiff's alleged symptoms and their limiting effects; (2) whether the ALJ erred in assessing Plaintiff's daily activities; (3) whether the objective medical evidence and diagnostic testing fail to support the severity of Plaintiff's claim; and (4) whether the ALJ properly evaluated Plaintiff's subjective complaints. The Court will address each issue in turn.

**A. The impact of *Drummond* and *Earley***

Before addressing these issues, the Court will examine the impact of Plaintiff's initial disability determination as it relates to the present decision. In Plaintiff's initial disability finding, ALJ Davenport found that Plaintiff could perform "light work," but could not repetitively squat, stoop, or kneel (Tr. 101). In the case presently under consideration, Plaintiff does not acknowledge the effect of ALJ Davenport's findings on his current disability claim—a requirement set forth in *Drummond vs. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and acquiesced to in AR 98-4(6).

In *Drummond*, the Sixth Circuit held that, if the agency formulated an RFC in a final decision on a prior claim, the agency "may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity." AR 98-4(6). That is, the *Drummond* court held that an ALJ—guided by principles of res judicata—is bound by the RFC

level determined in a prior claim for the same claimant absent new and material evidence indicating a change in the claimant's condition. 126 F.3d 837. The Sixth Circuit, in *Earley v. Commissioner of Social Security*, 893 F.3d 929, 933 (6th Cir. 2018), addressed the question of whether res judicata principles only applied when they favored the claimant or whether they also applied when they favored the government. In addressing this question, the *Earley* Court began with a detailed discussion of *Drummond*.

In *Drummond,* the ALJ originally found that a forty-nine-year old claimant who was limited to sedentary work was not disabled. *Earley*, 893 F.3d at 932. After the *Drummond* claimant turned fifty years old—which was the only change in her circumstances—she filed a second application for a new period. Under the applicable regulations, given her increased age with no other changes in her circumstances, she should have been deemed disabled. *Id.* However, "the second administrative law judge switched gears and found that she could carry out 'medium,' not just sedentary work, thus making her ineligible for benefits on this new ground." *Id.* (citing *Drummond*, 126 F.3d at 838-39). The *Earley* court explained why the *Drummond* court reversed:

> That was too much for our court to accept. "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits," we said, "the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. Nothing had changed between the end of the first application and the beginning of the second one—other than the advancement of one year in the applicant's age. In that setting, we explained, "principles of res judicata" prevented the ALJ from revisiting the applicant's capacity to handle anything more than sedentary work in the absence of "new and additional evidence" showing a change in her condition. *Id.*

*Earley*, 893 F.3d at 932–33.

Like the *Drummond* claimant, the claimant in *Earley* had applied twice for disability benefits. In the first decision, the ALJ found Earley was not disabled. She again applied for a new period of disability, and the ALJ concluded, under *Drummond*, that he was required to give the

claimant the same RFC assigned in the previous decision absent "new and material evidence documenting a significant change in the claimant's condition." *Earley*, 893 F.3d at 930. "The district court reversed, on the ground that the 'principles of res judicata' announced in *Drummond* apply only when they favor an individual applicant, not the government." *Id.* The Sixth Circuit rejected the district court's approach to *Drummond* and laid out its previous holding succinctly stating:

> That was wrong. The key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government. At the same time, they do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings.

*Id.* at 930-31.

In this case, there was no triggering or intervening event between Plaintiff's prior claims and his new claims. When Plaintiff filed for the second time, he told the disability examiner at the initial level that he was filing his claims "on the same conditions" as his prior claims. (Tr. 266). His alleged onset date was the day after the final decision on his prior claim. (*Id.*). He was 30 years old and still classified as a younger individual (18-49)—almost 20 years short of a new age category. *See* 20 C.F.R. §§ 404.1563, 416.963. While each new application is entitled to review, plaintiffs "should not have a high expectation about success if the second filing mimics the first one and the individual has not reached a new age (or other) threshold to obtain benefits." *Earley*, 893 F.3d at 933. Consequently, absent a showing that Plaintiff experienced a change in his physical condition or classification, the ALJ was required to adopt—under *Drummond* and *Earley*—the initial RFC assessment made by ALJ Davenport. *See Earley*, 893 F.3d at 933.

In response, Plaintiff contends that it was "self-evident" from his blood sugar readings that he experienced considerable difficulty controlling his blood sugar levels with insulin since 2011

and that it was "the actual ups and downs [of his blood sugar] that cause the symptoms." [Doc. 23 at PageID #: 876-77]. Accepting Plaintiff's claim at face value still supports the ALJ's formulation of an RFC in the present case consistent with the ALJ Davenport's RFC determination in the first case. Plaintiff's assertion that he had been having trouble controlling his blood sugar since 2011 was factored into ALJ Davenport's original RFC determination in Plaintiff's first disability claim. Indeed, Plaintiff filed that claim in June 2011 and ALJ Davenport decided the claim on May 28, 2013. Plaintiff's stated problem with respect to the fluctuations in his blood sugar levels pre-existed the present claim and were present when ALJ Davenport made his RFC assessment. There is no evidence that Plaintiff's physical condition has changed since 2011 (or that he is in a different classification). Consequently, the ALJ considering his current claim is required by AR 98-5(6) to adopt the same RFC—leading to a finding that Plaintiff is "not disabled."

Similarly, Plaintiff emphasizes that he had received consistent treatment for seven years regarding pain from diabetic neuropathy. [Doc. 23 at PageID #: 877]. Again, Plaintiff's emphasis on the continuous—but unchanging—nature of his symptoms and treatment over the years leads to the conclusion that the RFC should be consistent with the prior RFC finding under AR 98-4(6), resulting in a continued finding of "not disabled."

The Court also finds that the ALJ properly considered ALJ Davenport's findings in this case. The ALJ reviewed the records underlying ALJ Davenport's decision. (Tr. 16, 334-512). The ALJ recognized that additional evidence was submitted since ALJ Davenport's decision. (Tr. 18-27). He recognized that Plaintiff continued to undergo treatment for diabetes and diabetic neuropathy from the same physician and that Plaintiff had advanced to using an insulin pump. (Tr. 18, 641-50, 680-88, 694-717). While there were some issues with compliance, the ALJ found that the evidence as a whole supported the finding that Plaintiff's diabetes mellitus remained a severe

9

impairment. (Tr. 18). The ALJ also discussed that the evidence showed ongoing treatment of diabetic neuropathy—with no worsening or improvement—and that Plaintiff continued to be treated for chronic knee pain (*Id.*).

Based on the additional evidence, the ALJ found that it was appropriate to diverge from ALJ Davenport's RFC and include additional limitations. (Tr. 21-22). Both ALJs found that Plaintiff could perform "light work" as defined by the regulations. (*Cf.* Tr. 21-22 with Tr. 101). However, while ALJ Davenport found that Plaintiff could not repetitively squat, stoop, or kneel (Tr. 101), the ALJ in the present case further reduced these maneuvers to only frequent performance (Tr. 21-22). Also, in observing Plaintiff's alleged worsening of his blood sugar fluctuations, the ALJ found that Plaintiff could only frequently balance, crouch, and climb ramps and stairs; only occasionally climb ladders, ropes, and scaffolds; and should avoid all exposure to vibrations. (*Id.*). The ALJ's inclusion of these additional limitations in Plaintiff's RFC reflects that he appropriately deviated from ALJ Davenport's RFC by considering the similarities and differences in Plaintiff's physical condition and classification from the date of his first disability claim to the date of the determination of his second disability claim.

## B. Plaintiff's Credibility

Plaintiff next argues that his allegations and symptoms—supported by his own testimony and that of his mother—were evidence that his limitations were more severe than those found by the ALJ. [Doc. 23 at PageID #: 876-80]. Plaintiff contends that his testimony and statements are completely consistent throughout the record. [*Id.* at PageID #: 879-80]. Plaintiff's own testimony, as well as the testimony of his mother, were of course subject to credibility determinations made by the ALJ.

It is axiomatic that determinations of credibility are within the ALJ's discretion. *See Ritchie*

*v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (recognizing that the Sixth Circuit holds the ALJ's credibility findings to be virtually "unchallengeable") (citations omitted). An ALJ's findings on credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. But those findings must be supported by substantial evidence. *Id.* And "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

In considering Plaintiff's symptoms as well as the medical evidence, the ALJ found that Plaintiff's allegations regarding the limiting effects of his symptoms were not entirely credible. (Tr. 28-29); *see* 20 C.F.R. § 404.1529 ("In determining whether you are disabled, we consider all of your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). In making this finding, the ALJ determined that, in the aggregate—Plaintiff's activities of daily living; discrepancies in the evidence supporting Plaintiff's claim; and the weight of the medical opinions—led to a conclusion that did not support Plaintiff's disability claim. (*Id.*). The ALJ, for instance, properly considered the relevant factors in assessing Plaintiff's subjective complaints, including the objective medical evidence (e.g., normal sensory function, normal gait and station, improved A1C); Plaintiff's minimal and conservative treatment (e.g., treated with an insulin pump and medication); Plaintiff's improvement with treatment (e.g., reports of doing well, doctors noting his diabetes was under moderate to fair control); Plaintiff's failure to follow the recommended treatment plan (e.g., missed appointments, doctor's statements that the fluctuating glucose levels was due excessive caloric intake and a lack of intense monitoring); Plaintiff's daily activities (e.g., attempting to help remodel a home, cooking, shopping, driving, doing household chores, attending

school events, caring for three children, etc.); evidence that Plaintiff worked with these impairments before the alleged onset date of disability (e.g., Plaintiff was diagnosed with diabetes at age 8); and the medical opinions (e.g., both the State agency medical consultants and the physical consultative examiner opined that Plaintiff did not have limitations that would preclude all work) (Tr. 16-27).

An ALJ may find a claimant's statements "less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p, 1996 WL 374186, at *7. Overall, the evidence regarding the severity of Plaintiff's impairments is inconsistent and can support more than one reasonable conclusion. The Court will, therefore, not second-guess the ALJ's finding since the ALJ gave numerous reasons, supported by the record, for determining that Plaintiff's subjective allegations were not entirely credible. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.").

Of note, the ALJ's prescribed limitations were also consistent with the opinions by the State agency medical consultants who found that Plaintiff was capable of performing medium exertional work with certain limitations. (Tr. 23-24, 113-42, 147-78). The ALJ discussed this same evidence in his decision, for two purposes: (1) to show why the opinions of the State agency medical consultants were supported by (and consistent with) the record; and (2) to discuss the evidence that supported the RFC. (Tr. 23-24). In considering the opinions from the State agency medical consultants, the ALJ found that the reviews, analysis, and opinions were generally consistent with the record through the reconsideration level. (Tr. 25). In considering the record in its entirety, the

ALJ found that the postural and environmental limitations were supported, but that the lifting and carrying limitations appeared overly optimistic. (Tr. 27). Where the ALJ provided an explanation and reasoning for his factual findings, along with citations to specific evidence, the factual findings of the ALJ are "virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citations omitted); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."). Remand is, therefore, unnecessary.

### C. The objective medical evidence

Plaintiff also contends that the ALJ failed to properly assess the objective medical evidence regarding Plaintiff's RFC. The Court finds that this contention is without foundation.

The ALJ discussed, for example, that Plaintiff reported in August 2015 that his insulin control was better with the insulin pump, and he was doing well. (Tr. 23, 513). Though Plaintiff reported joint and muscle pain, he had a normal gait. (Tr. 23, 514). Then, in January 2016, Plaintiff's most recent A1C was good at 6.4 percent. (Tr. 23-24, 680). Plaintiff had complaints of pain and paresthesia, but an examination showed his feet were warm with no lesions and minimal hammertoe with intact monofilament/vibration and sensory normal at pulses. (Tr. 24, 682). The ALJ considered that Dr. Morris, Plaintiff's physician, attributed Plaintiff's suboptimal glucose control to frequent lapses in intense blood glucose monitoring. (Tr. 24, 680). Dr. Morris also reviewed with Plaintiff the importance of closely monitoring his glucose levels. (*Id.*).

As for Dr. Blaine, a physical consultative examiner, the State agency medical consultants and the ALJ both discussed Dr. Blaine's findings. (Tr. 24, 122, 124-25, 137, 139-40, 156, 159-60, 172, 175-76). Dr. Blaine noted that Plaintiff was well-developed, well-nourished, and well-kempt, did not use an assistive device, and could get on and off the exam table without difficulty. (Tr. 24,

666-67). Dr. Blaine's ultimate conclusion was that Plaintiff could perform a reduced range of light work. (Tr. 24, 667). But the State agency medical consultants concluded that Dr. Blaine's opinion was too restrictive based on the objective exam findings, and the ALJ agreed. (Tr. 24, 122, 124-25, 137, 139-40, 156, 159-60, 172, 175-76).

The ALJ also considered new evidence received at the hearing and found that it did not support a significant level of worsening described by the Plaintiff and his mother. (Tr. 25-26). He noted that Plaintiff continued to have bouts of noncompliance with treatment, such as a failure to keep appointments. (Tr. 26, 706). By October 2016, Dr. Morris considered Plaintiff's diabetes to be under moderate control. (Tr. 26, 704). Then, in February 2017, Dr. Morris noted that Plaintiff's diabetes was overall in moderate to fair control. (Tr. 26, 701). While Plaintiff's glucose control was suboptimal and labile in May 2017, Dr. Morris suspected it was due to excessive caloric intake. (Tr. 26, 696). Though Plaintiff's weight was up significantly in August 2017, Dr. Morris noted Plaintiff's diabetes was under fair control. (Tr. 26, 694-95).

The ALJ also discussed evidence from Dr. Williams for Plaintiff's chronic conditions and Plaintiff's medications. (Tr. 26, 718-801). The ALJ discussed Plaintiff's normal examination findings, including that Plaintiff appeared well developed and nourished, appropriately groomed, in no apparent distress, with normal neurological function and a normal gait. (Tr. 27, 728, 730, 733, 740, 744, 747, 751, 758, 762, 772).

The ALJ also considered Dr. Williams' opinion that Plaintiff had extreme limitations. (Tr. 804-05); however, the ALJ found that Dr. Williams' limitations were inconsistent with the record. (Tr. 27). Dr. Williams opined, for instance, that Plaintiff could not use foot controls, but each of the presentations in Dr. Morris' treating records showed that Plaintiff arrived unaccompanied indicating that he drove to the appointments (Tr. 27; *cf.* Tr. 805 *with e.g.*, Tr. 685, 694, 696, 700,

703, 706). Plaintiff testified at the hearing and wrote in his Function Report that he was able to drive. (Tr. 27, 85, 300). Dr. Williams' standing and walking limitations for Plaintiff were not consistent with the evidence of record, including that the sensory examinations showed normal findings and Plaintiff's gait and station were normal during the physical consultative examination. (Tr. 27, 667, 682). There was no evidence in the treating records to support the belief that Plaintiff would be off-task 20 percent of the workday, that he required lying down or reclining during the workday, or that he would miss more than one day of work per month. (Tr. 27). As the record did not support Dr. Williams' expressed limitations, the ALJ appropriately did not credit his opinion. *See Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013).

The ALJ further considered Plaintiff's reported daily activities. (Tr. 24). Plaintiff asserts that it was "disingenuous" for the ALJ to discuss that he assisted his mother with house renovations, drove, cooked, and did household chores without mentioning how qualified each of these activities were. [Doc. 23 at PageID #: 878]. The ALJ recognized Plaintiff's allegations regarding his limitations, including that his blood sugar level fluctuated with "the slightest things" and "physical activity" and that when his blood sugar was low, he was unable to walk. (Tr. 22, 44-47, 50). The ALJ also recognized Plaintiff's testimony that he had to rest often while performing chores and that he arrived late to his son's football games and sat in or stood near his vehicle as needed. (Tr. 23, 48, 54-55). The ALJ recognized that Plaintiff alleged limitations in each of the exertional, postural, and non-exertional items listed in block 20 of his Function Report (Tr. 24, 302).

The ALJ, however, ultimately agreed with the State agency medical consultants that Plaintiff's ability to do household chores, cook, shop, and drive was inconsistent with his alleged limitations. (Tr. 24, 119, 133-34, 153, 157, 169, 173). The ALJ also noted that the State agency

medical consultant at the reconsideration level concluded that the objective findings of a normal gait and normal neurologic functioning were inconsistent with Plaintiff's allegation that he was limited to walking one-eighth of a mile. (Tr. 24, 157, 173). The ALJ did not rely only on Plaintiff's reported activities of daily living to determine that Plaintiff could work but properly considered the inconsistency between Plaintiff's alleged limitations and his ability to perform some activities of daily living as one part of the overall analysis. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) ("Factors relevant to your symptoms such as pain, which we consider include: . . .Your daily activities"); *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (explaining the ALJ may consider a claimant's activities as one factor in the evaluation of subjective complaints). The ALJ properly considered Plaintiff's subjective complaints; remand is thus unnecessary.

## V. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgement on the Pleadings [Doc. 22] will be **DENIED**; the Commissioner's Motion for Summary Judgment [Doc. 24] will be **GRANTED**; and the decision of the ALJ will be **AFFIRMED**. Judgment will be entered in favor of the Defendant.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE